Robert J. SWEITZER

v.

Lowell D. HEWITT.

Civ. No. 79–312.

United States District Court,
M. D. Pennsylvania.

Oct. 8, 1980.

Robert J. Sweitzer, pro se.

Thos. G. Peoples, Dist. Atty. of Blair County, Hollidaysburg, Pa., for respondent.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The present petition for a writ of habeas corpus comes before the court on exceptions filed to the report of U.S. Magistrate John Havas. The petitioner was convicted in the Court of Common Pleas of Blair County, Pennsylvania; in March of 1977 on charges of aggravated assault, robbery, theft and escape. On March 10, 1979, petitioner filed the present action attacking these convictions. He has specified three grounds: alleged violation by the trial court of Pa.R. Crim.P. 140(d) and 142 which relate to the timeliness of petitioner's preliminary hearing, alleged violation by the trial of Pa.R. Crim.P. 1100 which governs the timeliness

of petitioner's trial, and the allegedly erroneous giving of an "accomplice charge" to the jury.

The Magistrate has recommended denying the petition on two grounds. First, the Magistrate had indicated that the record fails to establish that the petitioner has exhausted his state remedies. Alternatively, the Magistrate reports that the errors relied upon by the defendants do not rise to constitutional dimension. The court disagrees and will grant the petition for habeas corpus for reasons that follow.

### I. Exhaustion of State Remedies

■ The court is of the opinion that the record does not demonstrate a failure to exhaust state remedies. The Magistrate noted that the only documentation of direct appeal to the Supreme Court of Pennsylvania consists of a per curiam order dated November 20, 1978. The order remanded the case for failure to comply with Pa.R. A.P. 1115, but grants petitioner leave to file an amended petition for allowance of appeal. As the petitioner indicates, however, the Pennsylvania Supreme Court denied a subsequent petition for allowance of appeal on February 13, 1979.[1] Respondents do not deny this. Instead, they base their exhaustion argument on petitioner's failure to seek relief under the Pennsylvania Post Conviction Hearing Act (PCHA). The court cannot agree that the petitioner must pursue his PCHA remedy.

This circuit has held resort to the PCHA unnecessary provided that the state has had one full opportunity to correct any errors of constitutional dimension. *See United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 764 (3d Cir. 1978) (raising issue at trial and on direct review suffices to exhaust state remedies); *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 892 (3d Cir. 1975) (PCHA remedy unnecessary after affirmance by Superior Court and denial of allocatur by Supreme Court); *United States ex rel. Schultz v. Brierley*, 449 F.2d 1286, 1287

---

1. Document No. 17 supports petitioner's assertion. By letter of September 14, 1980, the Prothonotary of the Supreme Court of Pennsylvania has indicated that petitioner's appeal was denied per curiam on February 13, 1979.

(3d Cir. 1971) (exhaustion of "direct appellate remedies" obviates resort to PCHA). Because the court finds that the Pennsylvania courts have had an opportunity to correct the allegations of error, petitioner has exhausted his state remedies. Therefore, the court must proceed to an examination of the merits of petitioner's claims.

## II. *Petitioner's Allegations of Error*

### A. Timeliness of the Hearings

In the first two grounds advanced by petitioner, he argues that his preliminary hearing and ultimate jury trial were untimely. In the case of his preliminary hearing, the petitioner alleges a violation of Pa.R.Crim.P. 140(b)(1) which requires that the preliminary hearing follow preliminary arraignment by a period more than three days but less than ten days. The rule, of course, permits extension for cause shown. Furthermore, Rule 142 permits continuances but adds a requirement of noting such continuances on the docket together with the reasons for granting the continuance. Petitioner alleged that the arraigning magistrate set a date for preliminary hearing,[2] and that the preliminary hearing occurred some three months after preliminary arraignment without compliance with either Pa.R.Crim.P. 140(d)(1) or 142.[3]

Pa.R.Crim.P. 1100, on the other hand, requires commencement of trial within 180 days of the filing of the complaint unless the time is extended at Commonwealth request. The rule also excludes time from the 180 day calculation under circumstances not relevant here. Again petitioner alleges that the 180 day period had long expired before his trial commenced.

■ For each of these timeliness claims the parties have briefed Pennsylvania law thoroughly. This energy, however, has been misdirected. Even if petitioner had suffered from an error of Pennsylvania law, such an error forms no basis for habeas corpus relief unless it results in custody violating the Constitution, law or treaties of the United States. *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975); *United States ex rel. Hayward v. Johnson*, 508 F.2d 322 (3d Cir. 1975). In rare circumstances, a state trial error may vitiate the fairness of a trial, or constitute deprivation of due process. *United States ex rel. Choice v. Brierley*, 460 F.2d 68, 70–71 (3d Cir. 1972). *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3d Cir. 1967). Petitioner raises no such error in his timeliness claims. Unless the alleged defects in the Pennsylvania proceeding amount to deprivation of the Sixth Amendment right to a speedy trial, this court may grant no relief.[4] *See United States ex rel.*

---

**2.** At the September 22, 1975 hearing the arraigning magistrate testified that he set no date for a preliminary hearing at the March 8, 1975 arraignment because of the medical condition of Commonwealth witnesses Gormont and Ferguson. Instead, he testified that he set a June 10, 1975 preliminary hearing date after receiving notice of the witnesses' availability in May of 1975. On cross examination, however, petitioner's counsel elicited testimony apparently showing that a hearing date had been set earlier without notice to the defendants, and that the matter was then delayed without hearing. Transcript of testimony of September 22, 1975 at 10–14.

**3.** Rule 140(d)(1) reads:
(d) unless the preliminary hearing is waived by a defendant who is represented by counsel, the issuing authority shall:
(1) fix a date and hour for a preliminary hearing which shall not be less than three nor more than ten days after preliminary arraignment unless extended for cause shown, unless the issuing authority fixes an earlier date

upon request of the defendant or his attorney with the consent of the complainant and the attorney for the Commonwealth;

. . . . .

Rule 142 reads:
The issuing authority shall for cause shown, grant a continuance and shall note every continuance together with the reasons therefor on his docket.

**4.** Although the prisoner alleges and argues that the Pennsylvania courts violated their own criminal procedure rules, the court must go on to examine the constitutional questions. In examining a pro se complaint, the court bears a greater obligation to sift through the allegations in the pleading to determine whether they suggest some form of relief not explicitly argued. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (pro se complaints held to less stringent standard of pleading); *Grant v. Hogan*, 505 F.2d 1220, 1225 (3d Cir. 1974) (in pro se case court obligated to consider "all forms of relief

*Little v. Twomey*, 477 F.2d 767, 770 (7th Cir. 1973) (notwithstanding prisoner allegations of violation of state's speedy trial statute, federal court may consider only violation of federal constitutional right to speedy trial).

■ Without a strong showing of prejudice, the length of delay between arrest and the probable cause hearing forms no independent basis for a Sixth Amendment claim. *See United States ex rel. Williams v. Russell*, 264 F.Supp. 505, 505–06 (E.D.Pa. 1967). The delay alleged between arraignment and the preliminary hearing may be considered as part of the overall delay in bringing petitioner to trial because arrest triggers the Sixth Amendment speedy trial protection. *Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). The court, therefore, finds that petitioner's first contention lacks merit. The court will, however, consider whether a speedy trial claim exists on the basis of the entire delay between arrest and trial.

*Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) provides the starting point for any analysis of a speedy trial claim. *Barker* mandates striking a balance among several factors: the length of the delay, the reasons for the delay, defendant's assertion of the right, and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2191. Of these factors, the length of delay constitutes a threshold inquiry; without a delay which is "presumptively prejudicial" in the "peculiar circumstances" of the case, other factors need not be weighed. *Id.* at 530–31, 92 S.Ct. at 2191–92.

■ The court is satisfied that petitioner has passed this threshold inquiry. Although courts have postulated various delays as sufficient to trigger the balancing process, *see, e. g., United States v. Parker*, 586 F.2d 422, 430 (10th Cir. 1978) (five-month delay fails to trigger balance test); *United States v. West*, 504 F.2d 253, 256 (D.C.Cir.1974) (six-month delay triggers

suggested by petitioner's challenge"). Here, petitioner generally alleges the unconstitutionality of the Pennsylvania court's conduct of the trial. Thus, the court must go beyond the

speedy trial), this court will eschew any attempt to quantify the minimum period which will trigger the inquiry. Rather, the court finds that an eleven-month delay in the circumstances of this case triggers review under the *Barker* test; the Commonwealth's case presented simple issues and was proven primarily through eyewitness testimony. *See United States v. Simmons*, 536 F.2d 827, 831 & nn. 12 & 13 (5th Cir. 1976).

In considering the reasons for the delay, the second *Barker* factor, the court notes that the delay is attributable to several causes. As the Magistrate had indicated, one of the Commonwealth's witnesses remained unavailable for a period of at least two months due to injuries sustained in the assault with which the petitioner was charged. *See* Transcript of testimony taken on September 22, 1975, at 37. Although petitioner's brief argues that the witness's condition did not cause the delay because the attending physician never informed the Magistrate of the witness's unavailability, the record does not bear out that contention. The witness, Joseph Gormont, testified that he informed the Magistrate of his condition. Thus, at least two months of the delay is not attributable to the Commonwealth.

A second period of delay occurred at the original trial date set for October 27, 1975. Petitioner's attorney had filed a variety of pretrial motions two days earlier, causing the further delay of the trial. *See* Transcript of October 27, 1975, at 1–2. Oral argument on the defense motions was set for December 8, 1975 and the trial itself was continued until the January term. Thus, even assuming that the delay from October 27, 1975 until the trial date of January 19, 1976 was longer than necessary, some portion of that delay is clearly attributable to efforts by counsel for petitioner.

■ Having determined that substantial portions of the delay arose from the acts of

Pennsylvania law argued by petitioner and examine possible speedy trial or due process violations.

the petitioner, any deliberate delay calculated to harass seems absent under the present circumstances. *See Barker v. Wingo*, 407 U.S. at 531 & n.32, 92 S.Ct. at 2192 & n.32. Moreover, this circuit has indicated that delays caused by defense "maneuvering" cannot form the basis of a claim of denial of the right to a speedy trial. *United States v. Taylor*, 469 F.2d 284, 285 (3d Cir. 1972). While the record does not necessarily indicate that motions filed on petitioner's behalf constituted maneuvering or an invitation to error, the record does indicate that the Commonwealth stood ready to go to trial almost three months earlier than the actual trial date but for the defense motions. *See* Transcript of October 27, 1975 at 2 (indicating that the Commonwealth had brought witnesses for trial on October 27).

The third *Barker* factor, timely assertion of the right, weighs in petitioner's favor. Petitioner asserted his rights at every available opportunity. The initial delay in bringing petitioner to a preliminary hearing brought early protest from petitioner. *See* Transcript of September 22, at 73–74. Immediately after the passage of 180 days by petitioner's calculation, his counsel pressed the speedy trial claim. *See* Defendant's motion to quash of September 4, 1980; Transcript of September 22, at 73–74.

Finally, *Barker* requires the court to consider the extent of prejudice to petitioner. 407 U.S. at 532, 92 S.Ct. at 2193. *Barker*

identified three types of prejudice: oppressive pretrial incarceration, anxiety of the accused, and impairment of the defense. *Id.* Petitioner alleges no prejudice of any form. Moreover, the record does not indicate that petitioner could substantiate such an allegation if he made it.

The record indicates that petitioner was already incarcerated at the time that the offenses were committed. Apparently, this incarceration related to a 1973 robbery charge referred to in the trial transcript. Trial Transcript at 240. While this court, under some circumstances would have this record expanded to determine whether petitioner's incarceration would have extended through the entire period, such expansion of the record is unnecessary. Because the length of the pretrial delay is not excessive and because much of that delay is attributable to petitioner's own actions, the fact of pretrial incarceration would not weigh heavily in petitioner's favor. Therefore, the petitioner's request for a writ of habeas corpus is denied with respect to the speedy trial claim.

### B. *The Jury Charge*

At his trial, the petitioner did not testify, relying for his defense solely on the testimony of his co-defendant, John Noyer. During the charge to the jury, the trial judge inserted an "accomplice charge" concerning Mr. Noyer's testimony.[5] In essence,

---

5. The charge reads:

With respect to the testimony of an accomplice. This is a matter of extreme importance, and the testimony given by Mr. Sweitzer [sic] here raises the question of his credibility, and that is a matter for you to weigh carefully. In addition to commenting upon the question of credibility generally there are some things which must be said concerning this witness's testimony in particular.

Now, there is no rule of law which forbids the jury convicting upon the uncorroborated testimony of an accomplice. While the law permits such a conviction, it looks with disfavor upon this character of proof, and, because its source is corrupt, the jury should ordinarily not rely on it unless corroboration is present. You should scrutinize the testimony of Mr. Noyer closely and determine whether corroboration exists. Testimony to be classed as corroboration need not relate

solely to the main fact involved, but may be considered as corroboration when the testimony relates to relevant and material facts which have a direct relation to the main fact involved. Corroborative testimony does not have to extend to the whole of the witness's testimony. If it is shown that he has testified truly in some important particulars, the jury may infer that he has done so in others. In other words, when we speak of corroboration, we refer to the evidence which is supplementary to that given by the witness, and which tends to strengthen and confirm it.

However, even if your search for corroboration is fruitless, you, the jury, may believe an accomplice's testimony if it has the ring of truth. As you were told before, there is no rule of law which commands you to disbelieve the uncorroborated testimony of an accomplice, and the determination whether corroboration is necessary, or the sufficiency of

the charge instructed the jury to regard the testimony of Mr. Noyer with disfavor if the jury found that Mr. Noyer was an accomplice of the petitioner. Petitioner alleges that the charge destroyed the credibility of his sole witness thus denying him a fundamentally fair trial.

■ Again, the parties have briefed Pennsylvania law exclusively. Petitioner cites several authorities which appear to establish that giving the instruction constituted an error of Pennsylvania law. *See generally Commonwealth v. Jones*, 490 Pa. 599, 417 A.2d 201, 202–03 (1980); *Commonwealth v. Russell*, 477 Pa. 147, 153, 383 A.2d 866, 868–69 (1978). This court, however, cannot usurp the functions of Pennsylvania appellate courts. Unless the instruction "so infected the entire trial that the resulting conviction violates due process", *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), or violates a specific constitutional guarantee, the error falls outside the scope of review in a habeas corpus petition.

Taking the first of these alternative possibilities, employing an accomplice instruction in these circumstances is unwise. A few courts have criticized application of the instruction to circumstances in which the accomplice offers exculpatory evidence. As expressed by the Pennsylvania Supreme Court considering this matter:

> Legitimate basis exists for charging the jury to view an accomplice's testimony with suspicion when the accomplice testifies for the Commonwealth. Such a witness, out of the reasonable expectation of leniency, has an interest in inculpating others. This basis is inapplicable, however, when the accomplice testifies on behalf of the defense. One implicated in a crime cannot reasonably expect such leniency by exonerating others.

*Commonwealth v. Russell*, 477 Pa. at 153, 383 A.2d at 868.

■ Even if such an instruction received universal condemnation, however, this would not suffice to change the error to one of constitutional magnitude. *Cupp v. Naughten*, 414 U.S. at 146, 94 S.Ct. at 400. Moreover, employing an accomplice charge when the accomplice offers exculpatory evidence has survived constitutional attack in other circuits. *United States v. Stulga*, 584 F.2d 142, 144–45 (6th Cir. 1978); *United States v. Nolte*, 440 F.2d 1124, 1126–27 (5th Cir. 1971). The court therefore declines to find use of an accomplice charge against a defense witness *per se* unconstitutional.

Under certain circumstances, a charge concerning accomplice testimony may rise to the level of violating a specific constitutional guarantee. Specifically, in *Cool v. United States*, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) (per curiam), the Court found that an accomplice instruction violated the Sixth Amendment right to present exculpatory evidence, *id.* at 104, 93 S.Ct. at 357 (citing *Washington v. Texas*, 388 U.S. 14 (1970)), and that the particular instruction impermissibly shifted the burden of proof onto the defendant. 409 U.S. at 104, 93 S.Ct. at 357. The court also found error in the instruction in that it informed the jury that a conviction was possible on the basis of the uncorroborated testimony of an accomplice without also informing the jury that an acquittal on the same basis was possible. *See id.* at 103 n.4, 93 S.Ct. at 356 n.4 (such an instruction is fundamentally unfair even assuming some inculpatory accomplice testimony given). Unlike the present charge, however, the instruction in *Cool* required that the jury must believe accomplice testimony beyond a reasonable doubt before crediting the testimony. *Id.* at 102, 93 S.Ct. at 356.

In *United States v. Armocida*, 515 F.2d 29 (3d Cir. 1975), this circuit held that an instruction somewhat similar to the instant charge triggered the duty to inform the jury that the uncorroborated testimony of an accomplice could form the basis of a not guilty verdict.[6] *Id.* at 48 & n.26 (citing *Cool*

---

such corroboration as may be present, is solely for you. The only requirement of the

law is that you must, before you accept it, scrutinize it carefully and critically.

**6.** The court believes that both the *Cool* and

*v. United States,* 409 U.S. 100, 103 n.4, 93 S.Ct. 354, 356 n.4, 34 L.Ed.2d 335 (1972)). *See also United States v. Brinklow,* 560 F.2d 1003, 1007 (10th Cir.) (with exculpatory accomplice testimony, accomplice charge may well be inappropriate), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893 (1977). The charge in *Armocida* reads:

> The law is that an accomplice's testimony must be received with caution and weighed with care. The testimony of an accomplice is not to be rejected unless the jury thinks it has no weight whatsoever. Like any other testimony, it is to be taken and dealt with by the jury as any other fact is considered or any other evidence is considered.
>
> Sometimes, if an accomplice's testimony cannot be heard and could not be used, there might be evidence of guilt which would not be available, and therefore, an accomplice may testify, but the testimony of an accomplice, I repeat, should be received with caution and weighed with care. *However, it is the law that a person, a defendant, may be convicted on these [sic] uncorroborated testimony, if the jury finds that the testimony is trustworthy and true.*

515 F.2d at 48 n.26 (emphasis in original). The court found the italicized portion of the charge to be the objectionable feature, in that it triggered the duty to instruct concerning acquittal on the basis of uncorroborated testimony of an accomplice. *Id.* at 48.

■ In the instant case, the court must determine whether the jury charge triggered this obligation to charge on acquittal on the basis of accomplice's testimony. The state trial judge charged "now there is no rule of law which forbids the jury convicting upon the uncorroborated testimony of an accomplice." Trial Transcript at 332. After discussing corroboration, the court instructed "However, if your search for a corroboration is fruitless, you, the jury, may believe an accomplice's testimony if it has the ring of truth." *Id.* The court must conclude that the language of the present charge differs in no significant respect from the charge in *Armocida.* Although the Common Pleas Court stated its charge in the negative, a charge indicating to the jury that it could convict using uncorroborated accomplice testimony could create confusion concerning use of exculpatory accomplice testimony equal to the confusion created in *Armocida.* Moreover, an examination of the instruction as a whole reveals no moderating instruction which would cure the defect in the accomplice instruction.[7]

After reviewing the transcript, the court cannot dismiss the error as harmless. Noyer was the sole defense witness. Petitioner's defenses of justification and self defense depended entirely on the credibility of that witness. *Cf., United States v. Stulga,* 531 F.2d 1377, 1379-80 (6th Cir. 1976) (finding testimony of accomplices "pivotal" to defense where defendant presented no other witnesses"). Although Noyer's testimony was contradicted in several respects by the testimony of the victims and other motorists who viewed portions of the incident, the evidence of Sweitzer's guilt was not overwhelming. *See generally Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

*Armocida* holdings rest upon constitutional grounds rather than upon an exercise of the supervisory power. *Cool* indicates that such an instruction is "fundamentally unfair." 409 U.S. at 103 n.4, 93 S.Ct. at 356 n.4. *Armocida* declined to conclude that the instruction was fundamentally unfair, yet this finding flowed from the court's conclusion that the error was harmless. 515 F.2d at 48 (distinguishing *Cool*). Moreover, *Cupp v. Naughten* seems to single out the *Cool* case as an example of an instruction that, by itself amounted to constitutional error. 414 U.S. at 147, 94 S.Ct. at 400. Thus, the court believes that the use of an instruction that is erroneous under *Cool* and *Armocida*

violates the constitution provided that the accomplice testimony "controls" the outcome of the case. *See* 515 F.2d at 48.

7. The court takes the view that the language permitting use of the testimony if it carried the "ring of truth" fails to alter the error in the charge. The instruction in *Armocida* cautioned the jury not to reject the testimony unless the jury believed that it lacked weight altogether. *See* 515 F.2d at 48 n.26 (quoting the instruction). The *Armocida* instruction was worded in terms that were at least as favorable to that defendant as the present instruction is to petitioner.

Therefore, the court orders that the writ of habeas corpus shall issue. The issuance of the writ shall relate only to the terms of imprisonment imposed on March 25, 1977. The Commonwealth shall have sixty (60) days in which to retry the petitioner.