

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2004

# USA v. Griggie

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3328

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Griggie" (2004). *2004 Decisions*. Paper 410.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/410

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-3328

UNITED STATES OF AMERICA

v.

ALBERT PETER GRIGGIE,
Appellant

On Appeal From the United States
District Court
For the Middle District of Pennsylvania
(D.C. Crim. Action No. 02-cr-00150)
District Judge:  Hon. William W. Caldwell

Argued May 24, 2004

BEFORE:  ROTH and STAPLETON, Circuit Judges,
and SCHWARZER,* District Judge

(Opinion Filed       August 6, 2004            )

---

* Hon. William W Schwarzer, United States District Judge for the Northern District of
California, sitting by designation.

Daniel I. Siegel
Thomas A. Thornton (Argued)
Office of Federal Public Defender
100 Chestnut Street
Harrisburg, PA  17101
  Attorneys for Appellant

Christy H. Fawcett
Theodore B. Smith (Argued)
Office of United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA  17108
  Attorneys for Appellee

---

OPINION OF THE COURT

---

STAPLETON, Circuit Judge:

Defendant Albert P. Griggie ("Griggie") appeals his conviction and sentence for transporting a minor in interstate commerce with the intent of engaging in criminal sexual activity and illicit sexual conduct with that minor in violation of 18 U.S.C. § 2423(a) & (b).  After the District Court denied his pre-trial motion to suppress certain inculpatory statements given to a Pennsylvania state trooper, Griggie entered a conditional guilty plea.  As part of the plea, Griggie reserved the right to challenge, and now does so challenge, the District Court's denial of his suppression motion.  We will affirm.

I.

2

As the parties are familiar with the facts and procedural history of this case, we review them only briefly. On March 13, 2002, Pennsylvania State Trooper Ricky L. Goodling, investigating the reported sexual assault of a seven year old girl, went to the location of a parked van in which Griggie, the suspected assailant, was reportedly living. Trooper Goodling approached the van and, after running its registration, learned that it was not validly registered. He noticed that someone was inside the van and knocked on one of its doors. When Griggie stepped outside, Trooper Goodling identified himself as a state trooper. Griggie then provided the trooper with a Virginia identification card and Trooper Goodling informed him that he was investigating complaints of sexual misconduct that Griggie might be involved in.

Trooper Goodling then requested, and Griggie consented to, a search of the van. During the search, Trooper Goodling observed several specific items that the reported victim had indicated were used by Griggie in connection with his alleged sexual misconduct. Trooper Goodling did not seize any of these items.

Following the search, Trooper Goodling asked Griggie if he would accompany him back to the State Police Barracks, which was located one half mile down the road. According to Trooper Goodling's later testimony, he informed Griggie that he was not under arrest and that he would be free to leave at any time. Griggie agreed and followed Trooper Goodling to the barracks in his own van. When they arrived at the barracks, they proceeded to the second floor and Trooper Goodling placed Griggie in an interview room

3

in the criminal investigation division.

Trooper Goodling and Griggie later gave differing accounts of what took place in the interview room, but the dispositive facts are uncontroverted. During the interview, Trooper Goodling repeated his earlier representation that Griggie was not under arrest and that he was free to leave regardless of the content of any statement he might give that night, unless he confessed to a murder. Griggie responded that if the trooper put that promise in writing, he would give a statement. Trooper Goodling then wrote and signed a note to Griggie stating: "If Albert Griggie tell[s]/admits what happened with touching Deseree Trowbridge he will be free to leave tonight from PSP HBG [the barracks]."

After receiving the note, Griggie gave a confession, and then repeated the confession for tape-recording. Both parties agree that Griggie was informed of his *Miranda* rights and signed a waiver of those rights at 8:30 p.m. Following his tape-recorded confession, at 9:45 p.m., Griggie gave oral and written consent to a search of his van. During the search, the items that Trooper Goodling had previously observed in the van were seized. Griggie was then allowed to leave the barracks in his own van.[1]

On June 26, 2002, a federal grand jury returned a two-count indictment against

---

[1]There are also several factual issues that are disputed by the parties. Although Trooper Goodling testified that he informed Griggie of his *Miranda* warnings as soon as he entered the interview room, Griggie contends that he was not told of his *Miranda* rights until after he gave an inculpatory statement. In addition, Griggie testified that before he gave the inculpatory statement he requested a lawyer. Trooper Goodling testified, however, that no such request was made. The District Court was aware of the conflicting testimony and its opinion resolved the factual disputes in favor of the Government. We find no error in the District Court's factual findings.

Griggie. Count one charged him with crossing a state line to engage in the aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c). Count two charged him with transporting a minor in interstate commerce with the intent of engaging in criminal sexual activity and illicit sexual conduct with that minor, in violation of 18 U.S.C. § 2423(a) & (b). Defense counsel thereafter filed a motion to suppress the inculpatory statements made to Trooper Goodling. Defense counsel argued that the statements were given involuntarily and were the product of psychological coercion, in violation of the Fifth Amendment. A suppression hearing was held on September 26, 2002, at which both Trooper Goodling and Griggie testified.

The District Court thereafter issued an order and opinion denying Griggie's suppression motion. The District Court concluded that Griggie had not been in custody when he made the inculpatory statements to Trooper Goodling because he was not restrained in any way and told numerous times that he was free to leave. In any case, however, the District Court found that Griggie was repeatedly advised of his *Miranda* rights and signed a waiver indicating that he understood the right not to give a statement. According to the District Court, Griggie's statements were not the product of police overreaching, and Trooper Goodling did not mislead Griggie or deprive him of the ability to make a "free and unconstrained choice about whether or not to make a statement." Accordingly, the Court held that Griggie's inculpatory statements were made voluntarily.

On November 26, 2002, Griggie entered a conditional guilty plea, under Fed. R.

5

Cr. P. 11(a)(1), to count two of the indictment.[2]  He was thereafter sentenced to 151

months of incarceration, and he now appeals.[3]

## II.

We review the District Court's denial of a motion to suppress for clear error as to

the underlying factual findings and we exercise plenary review of the District Court's

application of the law to those facts.  *United States v. Perez*, 280 F.3d 318, 336 (3d Cir.

2002) (citing *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998)).

Griggie argues on appeal that during his interview with Trooper Goodling, he did

not believe that he was free to leave.  Once a promise of freedom was before him, and for

that reason only, he contends, his ability to make a free and unconstrained choice as to

whether to waive his Fifth Amendment right against self-incrimination was overborne.

Accordingly, he argues that Trooper Goodling's promise of freedom rendered his

inculpatory statements involuntary and the District Court therefore erred in denying his

motion to suppress.[4]

---

[2]Count one was dismissed on motion of the United States.

[3]The District Court had jurisdiction over this case under 18 U.S.C. § 3231, and we
have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

[4]Griggie also argues that Trooper Goodling subjected him to a custodial interrogation
on the night of March 13, 2002.  He does not, however, contend that his inculpatory
statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Nor
would such an argument be credible given the District Court's finding, consistent with
Trooper Goodling's testimony, that Griggie was repeatedly informed of his *Miranda*
rights and nonetheless waived those rights.  Rather, his arguments with respect to
custodial interrogation are presented as a component of the voluntariness analysis, and we

6

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In accordance with the Fifth Amendment, "[i]t is clear that 'only voluntary confessions may be admitted at the trial of guilt or innocence.'" *United States v. Swint*, 15 F.3d 286, 288-89 (3d Cir. 1994) (quoting *Lego v. Twomey*, 404 U.S. 477, 478 (1972)).[5] This rule applies regardless of whether an interrogation is custodial or noncustodial, *see id.* at 289 (citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)), and in either case, "the government ha[s] the burden of 'proving, by a preponderance of the evidence, that [the defendant's] . . . confession was voluntarily given.'" *Id.* (citing *United States ex rel. Hayward v. Johnson*, 508 F.2d 322, 326 (3d Cir.), *cert. denied*, 422 U.S. 1011

---

will therefore construe them as such.

[5]Our Fifth Amendment analysis is, of course, also guided by relevant cases applying the Fourteenth Amendment:

> [P]rior to the Supreme Court holding that the [Self-Incrimination Clause of the] Fifth Amendment applied to the states, it held that the Due Process Clause of the Fourteenth Amendment bars the admission of "involuntary" confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163, 107 S. Ct. 515, 519 (1986). "The Court has retained this due process focus, even after holding, in *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed.2d 653 (1964), that the Fifth Amendment privilege against compulsory self-incrimination applies to the States." *Colorado v. Connelly*, 479 U.S. at 163, 107 S. Ct. at 519-20 (citing *Miller v. Fenton*, 474 U.S. at 109-10, 106 S.Ct. at 449). Thus, the Fourteenth Amendment due process cases provide the clearest definition of "voluntariness." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 223, 93 S. Ct. 2041, 2045-46 (1973) ("The most extensive judicial exposition of the meaning of 'voluntariness' has been developed in those cases in which the Court has had to determine the 'voluntariness' of a defendant's confession for purposes of the Fourteenth Amendment.").

*Swint*, 15 F.3d at 289.

(1975)).

"To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the will of the defendant." *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973)). We apply the totality of the circumstances test to a case like this one, where we must determine the effect of any direct or implied promise upon the voluntariness of a suspects's confession. *See id.* at 608.[6] The potential circumstances to be considered include: "the length of the interrogation; its location; its continuity; the defendant's maturity; education; physical condition; and mental health," and "the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation." *Swint*, 15 F.3d at 289 (citations omitted). The crucial element, however, is that of police coercion. *Id.* According to the Supreme Court, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause . . . ." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Such coercive activity includes "trickery, psychological

---

[6]Although Griggie attempts to rely upon the Supreme Court's statement, in *Bram v. United States*, 168 U.S. 532, 542-43 (1897), that in order to be voluntary, a confession "must not be . . . obtained by any direct or implied promises, however slight," both this Court and the Supreme Court have clearly treated such promises as part of the totality of the circumstances. *See Arizona v. Fulminante*, 499 U.S. 279, 285 (1991) ("[I]t is clear that this passage from *Bram* . . . under current precedent does not state the standard for determining the voluntariness of a confession . . . ."); *Miller*, 796 F.2d at 608 ("[P]romises do not trigger an analysis different from the totality of the circumstances test."); *United States v. Shears*, 762 F.2d 397, 401-02 (4th Cir. 1985).

pressure, or mistreatment." *Withrow v. Williams*, 507 U.S. 680, 708 (1993).

We have emphasized that the totality of the circumstances approach "is not a but-for test: we do not ask whether the confession would have been made in the absence of the interrogation." *Miller*, 796 F.2d at 604. Rather, we recognize that the police may use psychological tactics in order to obtain a confession, and the question to be answered when such tactics are used is whether they "were so manipulative or coercive that they deprived [the suspect] of his ability to make an unconstrained, autonomous decision to confess." *Id.* at 605. Psychological ploys by the police "may play a part in the suspect's decision to confess, but so long as that decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary." *Id.*; *see also United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir.) ("The police are allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties; they just are not allowed to magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible."), *cert. denied*, 498 U.S. 875 (1990).

In the case before us, even assuming that Griggie subjectively believed that he was not free to leave the barracks on the night in question, and that Trooper Goodling's promise was the sole reason for Griggie's confession, we simply cannot conclude that Trooper Goodling engaged in coercive activity. There is no evidence in the record that Trooper Goodling attempted to deceive or pressure Griggie into giving an inculpatory statement. Griggie's only argument to the contrary is based upon a strained interpretation

9

of Trooper Goodling's written promise.

Griggie argues that the written promise – "[i]f Albert Griggie tell[s]/admits what happened with touching Deseree Trowbridge he will be free to leave tonight from [the barracks]" – makes clear by implication that Griggie was free to leave that night *only* if he gave an inculpatory statement. We disagree. Such an interpretation is supported neither by logic nor by a reading of the written promise in conjunction with Trooper Goodling's oral representations to Griggie.

The statement embodied in the written promise, and its inverse, are not logical equivalents. That is, the promise cannot be read logically to mean that, if Griggie refused to give a statement, he would not be free to leave that night. Nor, we believe, can such a reading reasonably be implied given Trooper Goodling's testimony, and the District Court's finding, that Griggie was repeatedly informed that he was not under arrest, that he was free to leave at any time, and that he would continue to be free to leave that night no matter what he told Trooper Goodling (unless he implicated himself in a murder).

The import of the written promise, when read together with Trooper Goodling's oral representations, was that Griggie could have given a statement that was not inculpatory, or no statement at all, and he nonetheless would have been free to leave that night. Accordingly, we conclude that the decision to confess rather than give a non-inculpatory statement was left entirely within Griggie's discretion. We therefore hold that Trooper Goodling's conduct was not coercive.

10

Other factors to be considered under the totality of the circumstances test also counsel against any conclusion that Griggie's inculpatory statements were made involuntarily. The interview itself was of relatively short duration, lasting approximately one hour and fifteen minutes from the beginning of the interview to the completion of Griggie's tape-recorded confession. During the interview, Griggie was not subjected to any threats or physical deprivation. Not only was he informed of his right to remain silent and his right to counsel, but he also signed a form acknowledging his understanding, and waiver, of those rights. Accordingly, he understood that any inculpatory statement could be used against him. Griggie himself, although possessing only a seventh-grade education, was fifty-two years of age and had no history of mental illness. He was previously enlisted in the military and also had previous experiences in the criminal justice system. In short, there is no indication that, under the totality of the circumstances, Griggie was unable to make an intelligent choice between giving an inculpatory statement, a non-inculpatory statement, or simply no statement at all.

### III.

For the reasons stated above, we will affirm the judgment of the District Court.

11