**Robert Eugene LYLE, Appellant,**

v.

**Donald WYRICK, Warden, Missouri State Penitentiary, Appellee.**

No. 76–1996.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1977.

Decided Nov. 16, 1977.

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

Ronald L. Hall, Asst. Federal Public Defender (argued), and David R. Freeman, Federal Public Defender, Kansas City, Mo., on brief, for appellant.

Neil E. MacFarlane, Asst. Atty. Gen., Jefferson City, Mo., argued; John D. Ashcroft, Atty. Gen., and Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., on brief, for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Robert Eugene Lyle appeals from the district court[1] order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

The case arises out of the July, 1971 killing of one Joetha K. Lewis that took place in Jackson County, Missouri. Petitioner was charged with the killing, was tried in the Circuit Court of Jackson County without a jury, was found guilty of first degree murder and was sentenced to life imprisonment. His conviction was affirmed on direct appeal. *State v. Lyle*, 511 S.W.2d 817 (Mo.1974).

On June 18, 1975 petitioner filed the instant petition for a writ of habeas corpus, alleging that the trial court erred in overruling his motion to suppress his allegedly involuntary confession. The district court ordered an evidentiary hearing, but counsel subsequently agreed that the case could be submitted on the record of the state trial court and a stipulation by the parties as to the testimony of one other witness. The district court denied the petition and held that petitioner had failed to meet his burden of showing that the state court's finding of voluntariness was erroneous. Petitioner filed this timely appeal, based on the contention that the evidence does not support a finding that his confession was voluntary.

The central dispute in this case is whether members of the Jackson County Prosecutor's Office induced petitioner's confession

---

1. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri.

by an unfulfilled promise that they would seek medical or psychiatric treatment for petitioner under the Missouri Criminal Sexual Psychopath Act, Mo.Rev.Stat. § 202.700, *et seq.*, instead of bringing criminal charges against him.

We briefly summarize the evidence adduced at the trial court's hearing on the motion to suppress. Petitioner was taken into custody by Kansas City, Missouri police officers on the morning of July 12, 1971. He attempted to contact his attorney, Anthony Russo, a member of the Kansas Bar, but was initially unsuccessful. Police officers interrogated petitioner intermittently throughout the day. Petitioner testified that police officers talked to him about his being a sexual psychopath and indicated that they knew of his previous convictions for rape and public exhibitionism.

Petitioner further testified that police officers told him that they would get a lawyer for him if he would confess or give a statement.

Attorney Russo was subsequently contacted and brought to the police station on the evening of July 12, 1971. Prior to Russo's arrival, petitioner testified that he spoke to two members of the Prosecuting Attorney's Office, Charles Fraas and James Shockey. According to petitioner, Fraas and Shockey told him that there was strong evidence against him and that they could obtain psychiatric treatment for him. Petitioner further testified that he "was told I could sign a statement and that I wouldn't get the death penalty, that I would get some help * * * hospitalization." The procedure of the Missouri Criminal Sexual Psychopath Act was not explained to him, but he testified that Fraas told him he could get help if he showed he wanted it by signing a statement. Petitioner then conferred with Russo, who told petitioner that he should remain silent, but that if the prosecutors thought he could get some help, "that maybe it would be best." Shortly thereafter, petitioner confessed to killing Joetha Lewis.

Russo testified that he was not familiar with Missouri criminal law and that he took the case due to his having done previous legal work for petitioner. On the evening of July 12 he conferred with two members of the Prosecuting Attorney's Office (apparently Fraas and Shockey), who explained the Missouri Criminal Sexual Psychopath Act to him. Russo testified that it was his understanding that if petitioner gave a statement, the prosecutors would be willing to file a petition to have petitioner committed under the Act. According to Russo, he was told by the prosecutors that the filing of a commitment petition was discretionary, but apparently was not told that a petition could be withdrawn. He testified that it was his understanding that petitioner would not be tried for murder if a commitment petition were filed.

On cross-examination, Russo said that he told petitioner that no statement need be given to the police, and that petitioner apparently understood this right. While Russo was present, no threats against petitioner were made, nor did anyone represent to petitioner that he would not be criminally charged if he gave a statement.

The State called Detective Lester Shriver, a member of the team of officers who interrogated petitioner. He testified that neither he nor anyone in his presence threatened petitioner or offered him anything in return for a statement. Shriver further testified that neither he nor anyone in his presence had represented to petitioner that if petitioner confessed he would receive medical or psychiatric care or that criminal charges would not be filed.

Officer Thomas Theisen testified that petitioner had been given his *Miranda* rights and had signed a waiver of rights form. He testified that no coercion or force was used against petitioner and that neither he nor anyone in his presence promised petitioner that he would not be criminally charged if he confessed. On cross-examination, he testified that something was probably said to petitioner suggesting that peti-

tioner should get "help" if he (petitioner) committed the offense, but that Theisen did not discuss the matter with Fraas.

Charles J. Fraas, who was chief warrant officer of the Jackson County Prosecuting Attorney's Office during the period in question, testified that he did not tell Russo that petitioner would not be criminally charged if he confessed, nor did anyone else to his knowledge make such a promise. Fraas further testified that he never discussed with Russo either petitioner's prior sexual offenses or the Missouri Criminal Sexual Psychopath Act. He also testified that he did not discuss the Act with anyone else and that the matter had not been raised. He was unable to explain why commitment petitions had subsequently been filed by members of his staff.[2]

In the instant habeas action, the cause was submitted to the district court on the basis of the state transcript and one additional item of evidence. The parties stipulated that Ms. Adrienne Gottlieb was an employee of the Prosecuting Attorney's Office, that she filed a sexual psychopath commitment petition against petitioner on September 2, 1971, at the direction of Charles Fraas, and that she had no knowledge of any promise by Fraas or others to petitioner to file the petition.

The district court found that petitioner was afforded a full and fair evidentiary hearing in state court, which resulted in reliable findings of fact under applicable federal standards. The district court thus held that the state court finding that petitioner's confession was voluntary was entitled to a presumption of correctness under 28 U.S.C. § 2254(d), that petitioner had failed to show by convincing evidence that this finding was erroneous, and thus denied the petition.

■ We cannot say that the district court erred in applying the presumption of cor-

rectness to the state trial court's determination. The state trial court did not indicate whether it denied the motion to suppress because it discredited petitioner's testimony or because it believed petitioner's testimony but decided that the circumstances were not such as to render the confession constitutionally defective. This failure to specify the precise basis for its decision, however, does not preclude application of the § 2254(d) presumption. In *LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973), the Supreme Court held that, where there is no indication that the state court utilized an improper constitutional standard, and the facts as related by petitioner would entitle him to relief under the prevailing constitutional standard, a district court should assume that the state court would properly apply the law if it believed petitioner's story; therefore, a state court decision denying relief is in all likelihood based on discrediting petitioner's testimony, and is entitled to the presumption of correctness under 28 U.S.C. § 2254(d). *See also Mobley ex rel. Ross v. Meek*, 531 F.2d 924, 927 (8th Cir.), *rev'd sub nom. on other grounds, Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976); *Whitaker v. Estelle*, 509 F.2d 194, 197 (5th Cir.), *cert. denied*, 423 U.S. 872, 96 S.Ct. 140, 46 L.Ed.2d 103 (1975); *United States ex rel. Hayward v. Johnson*, 508 F.2d 322, 329 (3d Cir.), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2637, 45 L.Ed.2d 675 (1975); *Grant v. Wainwright*, 496 F.2d 1043, 1045 n. 3 (5th Cir. 1974); *LePage v. Picard*, 495 F.2d 26, 29 (1st Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 119 (1974).

■ Once the presumption is properly invoked, petitioner had the burden of proving by "convincing" evidence that the state court finding was erroneous. The only new evidence presented by petitioner in the district court was the stipulation as to Ms. Gottlieb's testimony. The only part of the

---

**2.** At least two petitions seeking to have petitioner committed as a sexual psychopath were filed approximately two months after petitioner

confessed. Apparently these petitions were subsequently withdrawn.

stipulation which adds anything to the prior testimony is that Mr. Fraas directed Ms. Gottlieb to prepare a commitment petition, which flatly contradicts his earlier testimony that he did not know why the petition had been filed. This evidence, if believed, would certainly call into question Fraas' credibility; however, in view of the fact that the stipulation affirmatively shows that Ms. Gottlieb did not know whether the petition was filed in exchange for petitioner's confession, we find that this impeachment evidence is not so convincing as to show that the state court finding was erroneous.

Petitioner's claim turned on the resolution of certain factual issues, which in turn depended on matters of credibility. The state court resolved these issues against petitioner. The district court properly applied the presumption of correctness to the state court finding and found that petitioner failed to introduce convincing evidence that the state court finding was erroneous.[3]

The order of the district court is affirmed.

---

**3.** At oral argument, counsel for petitioner put the argument in a slightly different way. He contended that, even assuming that no promise was made by Fraas or others, the evidence showed that Russo led petitioner to believe that a promise of treatment in lieu of prosecution had been made. Petitioner contends, by an analogy to cases involving guilty pleas, that this misleading misrepresentation rendered petitioner's confession involuntary.

We reject this contention. We assume, solely for the purpose of this discussion, that a defense counsel's false statement that a promise of leniency has been made in return for a confession is one circumstance to consider in determining whether the confession is voluntary. We further assume that Russo's and petitioner's testimony about their conversation is credible. The record does not show that Russo represented to petitioner that a promise of treatment in lieu of prosecution had been made. Rather, it merely shows that Russo explained the alternatives open to petitioner and did not recommend any one course of action to petitioner. The record thus fails to support petitioner's contention.