Ronald Ray BRANTLEY,
Petitioner-Appellant,

v.

Dan V. McKASKLE, Acting Director,
Texas Department of Corrections,
Respondent-Appellee.

No. 82–1424.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1984.

Claudia Wilson Frost, Houston, Tex. (Court appointed), for petitioner-appellant.

Charles Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The defendant, Ronald Ray Brantley, was convicted of murder and sentenced to life imprisonment. Brantley exhausted his state remedies and now appeals the denial by a federal district court of his application for a federal writ of habeas corpus. We affirm the denial of the writ.

Mary Emma Davis was murdered in late August 1972. She had been struck in the head with an iron skillet, her throat had been cut, and her vagina had been cut out. Five weeks later, an offduty detective stopped Brantley on a secluded road and searched Brantley's car, allegedly with Brantley's consent. The detective discovered two knives, a blank pistol, and pornographic materials; he arrested Brantley for possession of the knives.

Brantley was held at the police station from 4:30 p.m. until 10:25 p.m., when officers gave him *Miranda* warnings and began to interrogate him about Mrs. Davis' death. The police allegedly were questioning about the murder all persons who were found in possession of pornographic material. Officers showed Brantley a photograph of the murder scene during questioning. Sometime before 11:00 p.m., Brantley orally confessed to Mrs. Davis' murder. He then went with officers to an abandoned house and pointed out where he had buried the victim's vagina. Officers recovered a sack which contained deteriorating flesh. The contents of the sack were not identified as human flesh and were not introduced at trial.

Brantley was arraigned before a magistrate, who repeated the *Miranda* warnings. After a detective gave the *Miranda* warnings a third time, Brantley signed a written confession. Brantley stated at that time that he did not want to speak with an attorney.

At trial, Brantley moved to suppress his confessions and the objects found in his car. After hearing evidence outside of the presence of the jury, the trial court denied the motions. The trial court also recorded its findings on the issue of the voluntariness of Brantley's confession.

Brantley petitioned the federal district court for a writ of habeas corpus. The court referred the cause to a magistrate, who recommended denial of relief on all grounds. In doing so, the magistrate applied 28 U.S.C. § 2254(d), which provides that findings of fact made by a state court after a hearing on the merits are presumptively correct. The magistrate found that Brantley had failed to overcome the presumption. The trial court adopted the magistrate's report and denied relief.

Brantley has below-average intelligence. Tests placed his IQ between 50 and 75, with the most reliable estimate placed at 72. At trial, four experts, two from each side, classified Brantley as a borderline retardate, who can grasp concrete ideas but has a tenuous grasp of abstract concepts.

■ The only significant issue presented on appeal is the applicability of section 2254(d) to the voluntariness of Brantley's confession. Precedent in this Circuit has been ambiguous and potentially conflicting, but much of the uncertainty has been remedied by recent decisions. It now appears that the position of this Court is that the voluntariness of a confession is a mixed question of law and fact. *Gray v. Lucas*, 677 F.2d 1086, 1107 (5th Cir.1982) ("The determination of whether Gray's confession was voluntary presents a mixed question of law and fact and may be assessed independently by this Court."); *Dobbert v. Strickland*, 670 F.2d 938, 940 (11th Cir.1982); *Jurek v. Estelle*, 623 F.2d 929, 932 (5th Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). A majority of the Circuits concur: *Gray v. Lucas, supra* (pre-split Fifth Circuit decisions accepted as precedent by new Eleventh Circuit); *Castleberry v. Alford*, 666 F.2d 1338 (10th Cir. 1981); *United States v. Charlton*, 565 F.2d 86 (6th Cir.1977), *cert. denied sub nom. Jacek v. United States*, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978); *Lyle v. Wyrick*, 565 F.2d 529 (8th Cir.1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1585, 55 L.Ed.2d 805 (1978); *Hayward v. Johnson*, 508 F.2d 322 (3d Cir.1975), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2637, 45 L.Ed.2d 675 (1975); *Mancusi v. Clayton*, 454 F.2d 454 (2d Cir.1972), *cert. denied sub nom. Montanye v. Clayton*, 406 U.S. 977, 92 S.Ct. 2413, 32 L.Ed.2d 677 (1972). *Compare United States v. Wertz*, 625 F.2d 1128 (4th Cir.1980), *cert. denied*, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980) (voluntariness is question of fact). The Supreme Court has held that section 2254(d) does apply to the fact portion of a mixed question.

We agree with the Court of Appeals that the ultimate question as to the constitutionality of the pretrial identification procedures used in this case is a mixed question of law and fact that is not governed by § 2254. In deciding this question, the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in

light of the legal standard. But the questions of fact that underlie this ultimate· conclusion *are* governed by the statutory presumption.

*Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (footnote omitted; emphasis in original). Clearly, the federal district court must defer to the findings of fact of the state court unless such findings are clearly erroneous. Just as clearly, the conclusion drawn by the state court from those facts is subject to the independent review of the federal district court.

Less clear is the line dividing fact from law. If the challenge to voluntariness is based entirely on a disputed fact, the finding of fact inexorably determines the conclusion; acceptance of the fact forces acceptance of the conclusion. If, however, the challenge goes to the inferences drawn from the facts, the reviewing court need not accept the conclusion and may independently examine and weigh the facts. On rehearing, the *Gray* Court illustrated this distinction by noting that the conclusion of the state court could have been rejected had that court found that threats had been made, but that they were legally insufficient to constitute coercion. The state court, however, found no coercion, forcing the reviewing court to accept the conclusion of voluntariness.

A more difficult problem arises when the challenge rests on a claim which is not clearly either fish or fowl. In such a case, the Supreme Court directs that the conclusions of the state court shall prevail. "Great weight, of course, is to be accorded to the inferences which are drawn by the state courts. In a dubious case, it is appropriate, with due regard to federal-state relations, that the state court's determination should control." *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037 (1961).

■ Brantley has presented four issues which allegedly present legal, rather than factual, questions: waiver, coercion, denial of assistance of counsel, and lack of mental capacity. Of these issues, coercion and de-

nial of assistance of counsel appear to be issues of fact which may be resolved purely through credibility choices.

While lack of mental capacity may, in some cases, present legal issues, it is primarily an issue best resolved by observation of the subject's responses and demeanor. As is true for a pure question of fact, the trial court is in a better position to resolve the issue than a reviewing court. Likewise, the adequacy of a waiver may involve conclusions of law, but it also is heavily dependent on credibility choices made after observation of responses and demeanor. In these circumstances, it seems appropriate to heed the. words of the *Culombe* Court and to defer to the judgment of the state court.

■ The remaining issues raised by Brantley require little discussion. Of those issues, the first is that Brantley's indictment was fatally defective because it failed to allege a culpable state of mind. A defective indictment is grounds for habeas corpus relief only if the defect deprives the trial court of jurisdiction. *Meyer v. Estelle,* 621 F.2d 769 (5th Cir.1980). This standard is not met; the indictment as brought was sufficient under Texas law.

■ Second, Brantley contends that the search of his automobile and the subsequent admission of the articles discovered in the search violated his fourth amendment rights. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) (footnotes omitted). We conclude that the state courts offered Brantley a full and fair opportunity to litigate that claim; relitigation is barred by *Stone.*

Brantley's next claim relates to alleged discussion by jury members of his failure to testify. His claim was litigated in state court during the hearing on a motion for new trial. No error was shown.

Brantley's last claim alleges that he was denied his sixth amendment right to confront the witnesses against him. This allegation is general and conclusory. No support for the claim was shown to the trial court. The more specific allegations which were raised by counsel on appeal amount to new issues and are not legitimately before this Court.

The judgment of the district court is affirmed.

AFFIRMED.