MEMORANDUM AND ORDER:
 

 STERLING, District Judge.
 

 Petitioner is under a death sentence rendered by a jury in the 176th District Court of Harris County, Texas. Petitioner’s original application for writ of habeas corpus was amended in September of 1981 to allege three additional, unexhausted grounds for relief, and Petitioner moved for dismissal of the petition without prejudice in order to pursue his new grounds for relief in the state courts. This Court accepted the rec
 
 *667
 
 ommendation of the United States Magistrate that the application for writ of habeas corpus be dismissed without prejudice. The United States Court of Appeals for the Fifth Circuit reversed and instructed this Court “to reach the merits of Felder’s habeas petition.”
 
 Felder v. Estelle,
 
 693 F.2d 549, 554 (5th Cir.1982).
 

 The Crime
 

 The Texas Court of Criminal Appeals has summarized the activities which led to Petitioner’s conviction and death sentence:
 

 The deceased (James Hanks), who was a quadraplegic, was a resident at an apartment complex in Houston designed and operated as a residence for paraplegics and quadraplegics. Appellant was an employee at this complex. The evidence, which includes appellant’s written confession, establishes that on the night of March 14, 1975, appellant armed himself with a pistol and went to the apartments to “prowl around ... looking for something to steal.” Appellant entered the deceased’s unlocked apartment and, after looking around for a few minutes, found a camera in a closet. He then approached the bed in which the deceased was sleeping and attempted to slip his hand under the pillow, where the deceased was known to keep his wallet containing a large amount of cash. The deceased awoke and said, “Sammie, what are you doing?” Appellant placed a pillow over the deceased’s face, and after the deceased began shouting for help, appellant stabbed the deceased repeatedly in the neck and head with a pair of scissors he found on the night stand beside the bed. After the deceased stopped shouting, appellant took the wallet and camera and fled. The deceased died as a result of a stab wound in the temple which penetrated his brain.
 

 After leaving the apartment complex, appellant had his brother drive him to the airport, from which he took a flight to Denver. On the way to the airport, he threw the deceased’s wallet and the scissors from the automobile. Appellant remained in Denver for approximately one month, during which time he told a friend about the offense. Appellant left Denver in a stolen car, and was apprehended in Idaho Falls, Idaho, on April 14, 1975, after he was observed committing a traffic violation.
 
 Felder v. State,
 
 564 S.W.2d 776, 778.
 

 Procedural Background
 

 Petitioner complains of the judgment of conviction and sentence entered by the 176th Judicial District Court of Harris County, Texas. The judgment of conviction is dated June 23, 1976; an amended sentence of death by intravenous injection was signed and entered on March 11, 1980. Petitioner was charged with capital murder in violation of Article 19.03(a)(2) of the Texas Penal Code. Upon Petitioner’s plea of not guilty trial was before a jury. Petitioner did not testify at either the guilt or penalty stages of the trial.
 

 Petitioner appealed his conviction and sentence to the Texas Court of Criminal Appeals, which affirmed the judgment of the trial court on April 26, 1978, in
 
 Felder v. State,
 
 564 S.W.2d 776 (Tex.Cr.App.— 1978). Petition for writ of certiorari was denied by the Supreme Court of the United States on March 5, 1979, in 440 U.S. 950, 99 S.Ct. 1433, 59 L.Ed.2d 640.
 

 Petitioner filed a writ of habeas corpus on May 29, 1980, in the 176th Judicial District Court of Harris County, Texas, pursuant to TEX.CRIM.PROC.ANN. § 11.07 (Vernon 1977), which was denied by the Texas Court of Criminal Appeals on June 2, 1980. Petitioner received no hearing in the state courts regarding his habeas corpus petition. In his state court habeas proceedings Petitioner challenged his conviction and sentence as being in violation of rights guaranteed him by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.
 

 
 *668
 

 Petitioner’s Alleged Grounds for Relief in this Federal Habeas
 
 Petition
 
 [1]
 

 In this petition Felder claims that his conviction and sentence were obtained and imposed in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. More specifically, Petitioner contends (1) that his confession was obtained unconstitutionally; (2) that the prosecution’s concealment of evidence deprived Petitioner of his constitutional rights to effective assistance of counsel and due process of law; (3) that Petitioner was the victim of unconstitutional prosecutorial misconduct; (4) that Petitioner was denied the effective assistance of counsel; (5) that the Texas “waiver rule” is constitutionally defective; (6) that the exclusion of a prospective juror because of her opposition to the death penalty was improper; (7) that Petitioner’s sentence of death by lethal injection constitutes cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments.
 

 In considering Petitioner’s grounds for relief this Court must determine whether Petitioner has been the victim of unconstitutional treatment by the State of Texas during his trial and pending execution. Findings of fact by state courts in 28 U.S.C. § 2254 cases are entitled to a “presumption of correctness” on the part of a reviewing federal court, especially “in a case such as this where a federal court makes its determination based on the identical record that was considered by the state appellate court ...”
 
 Sumner v. Mata,
 
 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). The high measure of deference accorded state court findings requires “that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court’s findings lacked even ‘fair [] support’ in the record.”
 
 Marshall v. Lonberger,
 
 459 U.S. 422, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983).
 

 Petitioner’s Confession
 

 On April 23, 1975, Detective J.W. Clampitte of the Houston Police Department went to Idaho Falls, Idaho, to question Petitioner about the Hanks murder and to bring Petitioner back to Texas. Before the conversation began Clampitte read Petitioner his
 
 Miranda
 
 rights. Although initially denying his guilt, Petitioner soon made an oral admission that he had murdered Hanks. Petitioner responded affirmatively when asked if he had spoken with a lawyer previously. A written document entitled “Advising of Rights and Waiver” was signed by Petitioner. His statement was then reduced to writing in a document styled “Voluntary Confession;” this instrument was read and signed by the Petitioner and witnessed by three police officers. At no time did Petitioner indicate a desire to terminate the interview or request the presence of legal counsel.
 

 The events surrounding Petitioner’s arrest and confession were the subject of two state court hearings on October 17, 1975, and May 19, 1976. The trial judge entered findings of fact on May 21, 1976, concluding that the confession was admissible at trial since it “was freely and voluntarily made, without compulsion or persuasion.” Tr. Vol. I, 150,
 
 [2]
 
 only after Petitioner was informed of and had waived all applicable constitutional rights.
 

 The duty of this Court to “examine the entire record and make an independent determination of the ultimate issue of voluntariness,” Jur
 
 ek v. Estelle,
 
 623 F.2d 929, 931 (5th Cir.1980),
 
 cert. denied
 
 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), conflicts with the well established rule that findings of fact in state court habeas proceedings are entitled to a presumption of correctness.
 
 See Dunn v. Maggio,
 
 712 F.2d 998, 1000-01 (5th Cir.1983);
 
 ante
 
 at
 
 *669
 
 668. The Fifth Circuit has resolved this conflict by holding that “the voluntariness of a confession is a mixed question of law and fact.”
 
 Gray v. Lucas,
 
 677 F.2d 1086, 1107 (5th Cir.1982),
 
 cert. denied
 
 — U.S. -, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983),
 
 reh’g. denied
 
 — U.S.-, 103 S.Ct. 3099, 77 L.Ed.2d 1357;
 
 Brantley v. McKaskle,
 
 722 F.2d 187,188 (5th Cir.1984). While this Court must defer to the state court findings unless they are clearly erroneous, the conclusions drawn from those facts is subject to the independent review of this Court.
 
 Id.,
 
 189.
 

 In order to find the constitutionally required voluntariness in Petitioner’s confession,
 
 Schneckloth v. Bustamonte,
 
 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973), the record must show that “he made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him. The burden of proving facts which would lead to an opposite conclusion is on the habeas corpus applicant.”
 
 Jurek v. Estelle,
 
 623 F.2d at 937. Petitioner challenges the voluntariness of his confession on two grounds: (1) that “the Houston police interrogated petitioner and took a statement without notice to and in the absence of petitioner’s court-appointed local counsel,” Petition 7, and (2) that Officer Clampitte threatened Petitioner with physical harm if he refused to confess.
 
 Id.,
 
 10. While it is undisputed that R. John Insinger, an Idaho Falls lawyer, had been appointed to represent Petitioner, Officer Clampitte understood that to involve only the extradition proceedings, which Petitioner decided to waive on the advice of Insinger. While this challenge to the confession might go “to the inferences drawn from the facts” and hence be subject to independent examination by this Court,
 
 Brantley v. McKaskle,
 
 722 F.2d at 189, this Court refuses to reject the finding of the state court that Petitioner properly waived his right to legal representation during questioning. The record established that Petitioner had a history of prior involvement with law enforcement officials and was likely aware of the consequences of confessing. This prior experience also lessens the impact that Petitioner’s admittedly low intelligence has upon evaluating the entirety of the circumstances surrounding his confession,
 
 see Jurek,
 
 623 F.2d at 937-38, and suggests that he made “ ‘an intentional relinquishment or abandonment of a known right or privilege,’ ”
 
 Brewer v. Williams,
 
 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977)
 
 quoting Johnson v. Zerbst,
 
 304 U.S. 458 at 464, 58 S.Ct. 1019 at 1023, 82 L.Ed. 1461 (1938). Petitioner’s claim of physical threats being used to extract the confession involuntarily is based entirely on a disputed fact which has not been shown to be clearly erroneous.
 
 See Brantley v. McKaskle,
 
 722 F.2d at 189. Petitioner’s claim of an involuntary confession must be denied.
 

 Concealment of
 
 Evidence
 
 [3]
 

 When Petitioner was arrested in Idaho Falls, Idaho, he had in his possession a .38 caliber pistol. Petitioner claims that he was not given an opportunity to inspect the pistol before it was introduced in the penalty phase of the trial, and that this “concealment of evidence” violated Petitioner’s Fifth and Fourteenth Amendment rights to due process of law, his Sixth Amendment right to the effective assistance of counsel, and his Eighth and Fourteenth Amendment protection against cruel and unusual punishment.
 

 The record discloses that Petitioner’s counsel had filed a motion for discovery of physical evidence prior to a suppression hearing on October 17, 1975. At that time the prosecutor allowed defense counsel to inspect any and all physical evidence. Tr., Vol. I, 225. In his opening statement at trial the State’s lawyer mentioned that the pistol had been found when Idaho Falls police officer Brent Carlson arrested Petitioner. Edith Cobb testified that Petitioner
 
 *670
 
 admitted to her that he had a gun in his possession at the time of committing the offense and when he fled to Idaho. When the pistol was introduced at the punishment phase of the trial, defense counsel objected that he had not had a chance to inspect the pistol when he examined other physical evidence in the case. This was because the pistol had been in the possession of Officer Clampitte from the time he obtained it in Idaho. Tr. Vol. VIII, 3242. The trial court then made the tangible evidence available to defense counsel.
 

 Petitioner claims that his counsel was surprised by introduction of the pistol, and was unprepared “to impeach, rebut or counter” the impact of the pistol in the minds of the jurors. While a due process interest is implicated when a criminal defendant is denied the chance to examine evidence,
 
 White v. Maggio,
 
 556 F.2d 1352, 1355 (5th Cir.1977), the withheld evidence must be “material evidence of substantial probative force that ‘could induce a reasonable doubt in the minds of enough jurors to avoid a conviction.’ ”
 
 Gray v. Rowley,
 
 604 F.2d 382, 383-84 (5th Cir.1979),
 
 cert. denied
 
 445 U.S. 944, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980),
 
 quoting White v. Maggio,
 
 556 F.2d at 1357-58. Here the testimony of several witnesses prior to introduction of the pistol itself provided the additional evidence to support his conviction and sentence of death based upon possession of the gun. The record does not support Petitioner’s claim of materiality since there is no reasonable doubt that the jury would not have imposed the death sentence absent physical introduction of the pistol. Nor does the record sustain the claim that the State deliberately suppressed the pistol from Petitioner with the goal of gaining an unfair tactical advantage. Defense counsel was informed of the existence of the pistol well before the punishment phase of the trial, but did not request access to it. The prosecuting lawyer noted that Petitioner’s request would have been complied with when made.
 

 Prosecutorial Misconduct
 

 Petitioner claims that his trial was constitutionally unfair because of prosecutorial misconduct during the penalty phase of the trial. Petitioner protests certain “intemperate remarks, inflammatory speculation lacking any evidentiary basis, and attacks on defense counsel, all made in flagrant disregard of repeated admonitions by the Court.” Petition, 16. Petitioner claims that the prosecutor violated instructions from the trial court by repeatedly and knowingly introducing inadmissible evidence during the guilt phase of the trial. At the penalty phase of the trial Petitioner complains that the prosecutor three times went beyond the evidence when he asked the jury to assume that Petitioner’s prior lack of violent crimes was only because he had had no previous opportunity to cause physical harm. These comments were followed by instructions from the bench to the jury to disregard the comments, and a denial of defense counsel’s motion for a mistrial. The complained of “inflammatory attacks on defense counsel,” Petition 18, stem from two remarks made by the State’s lawyer during the penalty phase:
 

 “You know, some lawyers just keep trying to object to break the prosecutor’s train of thought when he gets a little warm.” Tr. Vol. VIII, 3474.
 

 “That motion in limine was placed on defense counsel’s conduct as well.”
 
 Ibid.,
 
 3475.
 

 The alleged misconduct of the prosecutor must be viewed in the context of the entire trial,
 
 Houston v. Estelle,
 
 569 F.2d 372, 377 (5th Cir.1978), and Petitioner will be afforded habeas corpus relief only in the most egregious cases where improper jury argument is so prejudicial as to render the trial fundamentally unfair.
 
 Cronnon v. Alabama,
 
 587 F.2d 246, 251 (5th Cir.1979),
 
 cert. denied
 
 440 U.S. 974, 99 S.Ct 1542, 59 L.Ed.2d 792;
 
 see also O’Bryan v. Estelle,
 
 714 F.2d 365, 389 (5th Cir.1983). The Texas Court of Criminal Appeals rejected Petitioner’s claims of improper acts by the prosecutor and found that the prosecutor’s comments regarding
 
 *671
 
 Petitioner’s possession of the gun during commission of the murder was supported by Edith Cobb’s testimony that Petitioner “had a gun in case anyone tried to stop him.”
 
 Felder,
 
 564 S.W.2d at 779. The Court also found that any improper conduct by the prosecuting attorney was cured by instructions from the bench.
 
 Id.
 
 When subjected to the independent review of this Court,
 
 Brantley v. McKaskle,
 
 722 F.2d at 189, the facts determined by the state courts rebut the contention that Petitioner was victimized by prosecutorial misconduct.
 

 Ineffective Assistance of Counsel
 

 Petitioner’s next claim is that he was denied effective assistance of counsel “(throughout the voir dire, guilt and penalty stages of the trial.” Petition, 20. Specifically, Petitioner complains of the failure of his lawyer (1) to offer any mitigating evidence at the penalty phase of the trial and (2) to challenge for cause or otherwise strike a juror who acknowledged on voir dire that Petitioner’s race might be a factor in making his decision.
 
 Id.
 
 The
 
 en banc
 
 decision in
 
 Washington v. Strickland,
 
 693 F.2d 1243 (5th Cir.1982),
 
 cert. granted,
 
 — U.S.-, 103 S.Ct. 2451, 77 L.Ed.2d 1332, establishes the standard by which claims of ineffective assistance of counsel will be judged: “the petitioner has the burden of persuasion to demonstrate that the ineffective assistance created not only ‘a
 
 possibility
 
 of prejudice, but that (it) worked to his
 
 actual
 
 and substantial disadvantage.’ ”
 
 Ibid.,
 
 1258.
 

 The record discloses that Petitioner’s lawyer conducted a vigorous defense by cross examining adverse witnesses and objecting frequently. Petitioner now complains of the failure of his attorney to introduce “psychological testimony ... at the crucial sentencing phase of his trial that ... might have served as mitigating evidence.” Petitioner’s traverse and reply to Respondent’s motion to dismiss and transfer, 17. This is a puzzling argument because introduction of the psychiatric evaluation of Petitioner would have revealed that, although Petitioner is of subnormal intelligence, he was adjudged to be capable of conforming his conduct to the requirements of the law. Tr. Vol. I, 76. Petitioner did not call his Idaho attorney to testify, although his affidavit discloses nothing that would have aided Petitioner’s case.
 

 Petitioner does not identify the venireman who supposedly stated that Petitioner’s race would be a factor of decision. This claim lacks the specificity and support needed for review, and is rejected.
 

 Petitioner’s legal representation did not work to his “actual and substantial disadvantage,”
 
 Washington v. Strickland,
 
 693 F.2d at 1258, and he was not the victim of unconstitutional ineffective assistance of counsel.
 

 The Texas “Waiver Rule”
 

 A Texas criminal defendant who admits his guilt at the penalty phase of the trial waives all constitutional objections arising from earlier portions of the trial.
 
 See Dugger v. State,
 
 543 S.W.2d 374 (Tex.Cr.App. — 1976). Petitioner claims that this rule imposes an unconstitutional dilemma on a capital defendant, who “must elect either to exercise his fundamental right to plead in his own behalf and to offer evidence in mitigation of capital punishment, or to preserve his claims of constitutional error; he cannot do both.” Petition, 21. This dilemma allegedly creates (1) a due process violation by conditioning the exercise of his Eighth Amendment right to take the stand and plead for mitigation upon an exercise of his Fifth Amendment right against self-incrimination and (2) a violation of the Eighth Amendment right to have all mitigating circumstances considered. Petitioner’s claim is that this constitutional dilemma would have been imposed upon his client “at the punishment phase of his trial in the event that the prosecutor asked petitioner whether he had committed the crime.” Petition, 21.
 

 This convoluted argument is easily rejected. The rule of which Petitioner complains does not create a constitutional di
 
 *672
 
 lemma; the defendant can always exercise his Fifth Amendment right
 
 not
 
 to respond to the State’s question of whether or not he committed the crime, and yet testify as to any factors which would mitigate punishment. The Texas waiver rule is not constitutionally defective.
 

 Voir Dire Violations
 

 At voir dire Mrs. Esther Moore was excused as a potential juror as a result of her responses to questions regarding her unwillingness to prescribe the death sentence. Tr. Vol. Ill, 1330-31. Mrs. Moore stated that she did not believe in capital punishment,
 
 Ibid.,
 
 1326, and that she could not give an affirmative answer to the questions that would result in imposition of the death sentence.
 
 Ibid,
 
 1328, 1329. As a result of these responses, the trial court excused Mrs. Moore “for cause,” presumably based on TEX. PENAL CODE ANN. § 12.31(b) (Vernon 1974). Petitioner now claims that this violates the holding of
 
 Witherspoon v. Illinois,
 
 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
 

 The state may constitutionally excuse jurors who are “so unequivocally opposed to the death penalty that they would not follow the law on the subject.”
 
 Smith v. Balkcom,
 
 660 F.2d 573, 578 (5th Cir. 1981),
 
 cert. denied
 
 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). Even more recently, the Fifth Circuit has stated its views on the
 
 Witherspoon
 
 notion that a state may excuse prospective jurors for cause where they express conscientious objections to the death penalty:
 

 The state does not run afoul of
 
 Witherspoon
 
 where the excluded juror has unequivocally stated his or her inability to vote for the death sentence without regard to the evidence adduced. E.g.,
 
 Bell v. Watkins,
 
 692 F.2d 999, 1006 (5th Cir.),
 
 cert. denied,
 
 [ — ] U.S. [ — ], 104 S.Ct. 142, 78 L.Ed.2d [134] (1983);
 
 Williams v. Maggio,
 
 679 F.2d 381, 384 (5th Cir.1982) (en banc),
 
 cert. denied,
 
 [ — ] U.S. [-], 103 S.Ct. 3553, 77 L.Ed.2d 1339 (1983). Even though the juror may equivocate initially, exclusion comports with our interpretation of
 
 Witherspoon
 
 if the juror ultimately concludes that he or she opposes the death penalty irrevocably.
 
 See id.
 
 at 385-89;
 
 O’Bryan v. Estelle,
 
 714 F.2d 365, 381 (5th Cir.1983).
 

 Sonnier v. Maggio,
 
 720 F.2d 401, 405 (5th Cir.1983).
 

 Although Mrs. Moore initially indicated her willingness to render a death verdict in certain “(v)ery rare cases,” Tr. Vol. Ill, 1304,
 
 see also id.,
 
 1312, 1327, it became clear from her answers that she was irrevocably opposed to the death penalty, Tr. Vol. Ill, 1324, 1326, and her exclusion did not violate the holding of
 
 Wither-spoon
 
 or of
 
 Sonnier v. Maggio, supra.
 

 The Texas Death Penalty Statute
 

 Petitioner claims that the Texas statutory scheme for imposing the death sentence violates the Eighth and Fourteenth Amendments, both generally and as applied in Petitioner’s case. As to his own case Petitioner argues that “the jury’s finding of deliberateness was based on an unconstitutionally vague standard that failed to channel the jury’s discretion,” Petition, 27, and that there was insufficient evidence of dangerousness and deliberateness to justify imposition of the death sentence.
 
 Ibid,
 
 29. As to the Texas statutory scheme in general, Petitioner argues that the law is constitutionally defective because (1) the Texas Court of Criminal Appeals fails to review death sentences to determine whether they are excessive or disproportionate and (2) the statutory framework does not provide the discretion required by the Supreme Court in death penalty statutes.
 

 The Texas statute
 
 [4]
 
 provides for the death penalty where the jury determines that the defendant acted “deliberately” in causing the death of the deceased and “where there is a probability that the defendant would commit criminal acts of
 
 *673
 
 continuing threat to society.” TEX. CODE CRIM. PROC. ANN. art. 37.071(b) (Vernon 1977). There is no basis for Petitioner’s claim that the jury did not know what “deliberately” meant. The argument that there was insufficient evidence of Petitioner’s deliberateness and dangerousness was rejected by the Texas Court of Criminal Appeals.
 
 Felder,
 
 564 S.W.2d at 778. As the Court pointed out, Petitioner had three prior prison terms which had no apparent impact in deterring him from committing additional crimes. In addition to the particular brutality of the murder, the evidence established that Petitioner was armed both when he committed the offense and when he was arrested, and that he stated his intent to use his weapon against anyone who would try to apprehend him. These state court findings, entitled to deference by this Court, fully support the special verdict of the jury as to Petitioner’s dangerousness and the deliberate nature of the offense.
 

 Petitioner’s broadside attack on the Texas capital punishment law has been rejected by the Supreme Court of the United States in several cases. Texas was one of many states which responded to the Supreme Court’s decision in
 
 Furman v. Georgia,
 
 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and “promptly redrafted [its] capital sentencing statute [] in an effort to limit jury discretion and avoid arbitrary and inconsistent results.”
 
 Pulley v. Harris,
 
 — U.S.-, 104 S.Ct. 871, 876, 79 L.Ed.2d 29 (1984). The Texas statute was specifically considered and upheld by the Supreme Court in
 
 Jurek v. Texas,
 
 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976), where the Court stated:
 

 “Texas’ capital sentencing procedures, like those of Georgia and Florida, do not violate the Eighth and Fourteenth Amendments. By narrowing its definition of capital murder, Texas has essentially said that there must be at least one statutory aggravating circumstance in a first-degree murder case before a death sentence may even be considered. By authorizing the defense to bring before the jury at the separate sentencing hearing whatever mitigating circumstances relating to the individual defendant can be adduced, Texas has ensured that the sentencing jury will have adequate guidance to enable it to perform its sentencing function. By providing prompt judicial review of the jury’s decision in a court with statewide jurisdiction, Texas has provided a means to promote the evenhanded, rational, and consistent imposition of death sentences under law. Because this system serves to assure that sentences of death will not be ‘wantonly’ or ‘freakishly’ imposed, it does not violate the Constitution.”
 

 In
 
 Pulley v. Harris, supra,
 
 the Supreme Court recently rejected the claim that proportionality review in death cases is a constitutional requirement.
 
 [5]
 
 The Court specifically reaffirmed the constitutional validity of the Texas capital punishment law:
 

 The Texas statute reviewed in
 
 Jurek,
 
 like the Florida statute reviewed in
 
 Proffitt,
 
 did not provide for comparative review. We nevertheless concluded “that Texas’ capital sentencing procedures, like those of Georgia and Florida,” were constitutional because they assured “that sentences of death will not be ‘wantonly’ or ‘freakishly’ imposed.” 104 S.Ct. at 883. (Stevens, J, concurring).
 

 The existence of “meaningful appellate review”,
 
 Id.,
 
 and the limited discretion of the jury, in the Texas statute,
 
 Id.,
 
 879, assures its constitutional vitality.
 

 Petitioner’s allegation that “the death penalty is discriminatorily applied in cases with poor, male and black defendants and white victims” Petition, 20, does not, as
 
 *674
 
 a general matter, entitle Petitioner to relief,
 
 [6]
 
 and Petitioner provides no facts to support the claim that his conviction and sentence were the result of racial animus. Petitioner’s claim that death by lethal injection constitutes cruel and unusual punishment must be rejected.
 
 See Estelle v. Gamble,
 
 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976);
 
 Gray v. Lucas,
 
 710 F.2d 1048, 1061 (5th Cir.1983),
 
 cert. denied
 
 — U.S. -, 104 S.Ct. 211, 77 L.Ed.2d 1453;
 
 O’Bryan v. McKaskle,
 
 729 F.2d 991, 994 (5th Cir.1984).
 
 Ex Parte Granviel,
 
 561 S.W.2d 503 (Tex.Cr.App.1976),
 
 cert. denied
 
 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1978).
 

 Petitioner’s final argument that death by lethal injection under the Texas statute is an unconstitutional ex post facto law is without merit.
 

 It is therefore ORDERED, ADJUDGED and DECREED that Petitioner’s writ of habeas corpus be DENIED in all respects. Petitioner’s motion for an additional hearing is DENIED. As the record establishes no non-frivolous ground upon which Petitioner may reasonably rely for relief,
 
 Coppedge v. United States,
 
 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1961), the Court finds that Petitioner’s motion to proceed in forma pauperis, if granted, would result in an appeal not taken in good faith. Said motion is hereby DENIED. 28 U.S.C. § 1915; FED.R.APP.PROC. 24(a).
 

 [1]
 

 . Petitioner's Amended Petition for Writ of Habeas Corpus by a Person in State Custody (hereafter "Petition”) was filed on October 7, 1981.
 

 [2]
 

 . The state court records in this case have been paginated more than once. References in this opinion are to the numbers which are stamped at the bottom lefthand corner of each page.
 

 [3]
 

 . The Court of Criminal Appeals discussed the physical introduction of the pistol only in the context of the claim of improper conduct by the prosecutor. 564 S.W.2d at 778-79.
 

 [4]
 

 . Subsection (e) was amended by the Legislature in 1981, becoming effective on August 30 of that year.
 

 [5]
 

 . "The issue in this case, therefore, is whether the Eighth Amendment, applicable to the States through the Fourteenth Amendment, requires a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the penalties imposed in similar cases if requested to do so by the prisoner. Harris insists that it does and that this is the invariable rule in every case. Apparently, the Court of Appeals was of the same view. We do not agree.”
 
 Pulley v. Harris,
 
 104 S.Ct. at 876.
 

 [6]
 

 . Justices Brennan and Marshall are convinced that decisions of the lower federal courts and scholarly research will eventually lead the Supreme Court to consider whether the death penalty is unconstitutional because of its applic
 
 a
 
 tion to defendants of different races.
 
 Pulley v. Harris,
 
 104 S.Ct. at 887-88.